Opinion by Judge LICHTENSTEIN.
¶ 1 Defendant, David Will Corson, appeals the district court's order denying his Crim. P. 35(c) motion for postconviction relief which alleged that the nondisclosure of the complaining witness's juvenile adjudications rendered his plea invalid and his counsel ineffective. We conclude that because juvenile adjudications in a prosecution witness's criminal history are discoverable and must be disclosed as part of the prosecution's discovery obligations, the court must reevaluate Corson's motion. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
I. Background
¶ 2 In 2001, Corson worked as a substance abuse counselor at a juvenile facility. K.B., a seventeen-year-old resident of the facility, alleged that Corson and she had engaged in a sexual relationship while she resided at the facility. Corson was subsequently charged with two counts: sexual assault on a child by one in a position of trust and sexual assault on a child by one in a position of trust-pattern of abuse.
¶ 3 Corson filed several discovery motions requesting impeachment information relating to K.B.'s criminal history, including juvenile adjudications, and other information that could lead to the discovery of character evidence probative of untruthfulness under CRE 608. The prosecution moved to strike these motions, asserting they requested information automatically discoverable under Crim. P. 16. The response also objected "to any information sought by [Corson] which [was] not explicitly discussed in Rule 16, Parts (a), (b) and (c)."
¶ 4 Corson also filed a discovery motion that requested K.B.'s medical and treatment records and alerted the prosecution that, "based on information and belief, [K.B.] has a reputation for making untruthful statements as well as having a past criminal history." The prosecution's response stated that "[the prosecution] ha[d] provided all information pertaining to the victim, which [was] in the possession of the Office of the District Attorney" and characterized the request as "nothing more than a fishing expedition." The court never ruled on Corson's discovery motions.
¶ 5 A few days prior to his scheduled jury trial, Corson pleaded guilty to sexual assault on a child by one in a position of trust in exchange for dismissal of the pattern of abuse count. The court sentenced Corson to an indeterminate sentence of ten years to life of intensive supervised sex offender probation.
¶ 6 Corson subsequently filed for postconviction relief pursuant to Crim. P. 35(c), initially seeking to withdraw his plea based on newly discovered evidence of K.B.'s recantation of her allegations against Corson.[1] However, after receiving consent from K.B. to review her file at the juvenile facility, Corson discovered evidence showing K.B. had previously made false allegations of sexual assault and had resulting juvenile adjudications for false reporting that the prosecution had not disclosed to the defense. Corson amended his Crim. P. 35(c) motion to also assert that the prosecution's nondisclosure of this exculpatory evidence and its affirmative misrepresentation that it had disclosed all discoverable information rendered his plea invalid and his counsel ineffective, and violated his rights to due process.
¶ 7 The district court held a hearing on Corson's motion. As pertinent here, Corson *31 presented documentary evidence of the discovery requests and the prosecution's responses. He also introduced defense counsel's affidavit and testimony that the prosecutor did not disclose K.B.'s criminal history, including false reporting of a sexual assault, and that the prosecutor had affirmatively told him that "there was no related discoverable information." Yet the same prosecutor had secured K.B.'s juvenile adjudication for false reporting.
¶ 8 A defense expert testified that once the prosecution represented that the requested information did not exist, defense counsel could not have ethically impeached K.B. at trial with such information. Defense counsel testified that he assessed the case without evidence of K.B.'s history of false reporting of sexual assault and resulting juvenile adjudications, and recommended that Corson accept a plea. He also testified that he would not have advised Corson to accept a plea had the prosecution disclosed this evidence, but instead would have recommended that Corson take the case to trial. Corson likewise testified that he would not have entered a plea, but would have insisted on going to trial.
¶ 9 The prosecution conceded at the hearing that the false reporting adjudication and related police reports were not disclosed to the defense. However, it presented testimony of other witnesses that Corson had access to, and he was aware of, information in K.B.'s file concerning her history of false reporting and juvenile adjudications. The prosecution also asserted that some of the requested information, such as treatment records or unrelated juvenile adjudications, was not discoverable because it was not in its possession or control.
¶ 10 The court issued a written order denying Corson's Crim. P. 35(c) motion. As pertinent here, in an oral ruling during the hearing, the court found that "as a matter of law juvenile adjudications are not subject to discovery." Perhaps, for this reason, the court's written order did not address whether the prosecution's failed to comply with its discovery obligations, and hence, whether the guilty plea was induced by misrepresentation. With regard to the ineffective assistance of counsel claim, the court concluded that because Corson already knew about K.B.'s history of false reporting, he failed to prove that his attorney's performance fell below the level of reasonably competent assistance, or that he would have insisted on proceeding to trial had his attorney advised him of K.B.'s history. This appeal followed.
II. Discussion
¶ 11 Corson contends that the district court erred in denying his motion, asserting that his guilty plea was unintelligent and involuntary because (1) the prosecution failed to comply with its discovery obligations under Crim. P. 16 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (2) the prosecution made an affirmative misrepresentation regarding the existence of exculpatory evidence that induced this plea. He also contends that the prosecution's nondisclosure of exculpatory evidence and its affirmative misrepresentation concerning its existence caused defense counsel to erroneously assess the case, rendering counsel ineffective.
¶ 12 We conclude that, while the district court issued a very detailed and thoughtful written order, it nonetheless mistakenly believed that juvenile adjudications were not discoverable, and perhaps due to this misapprehension, the court did not evaluate whether the prosecution complied with, or misrepresented its compliance with, its disclosure obligations.
¶ 13 Because each of Corson's contentions on appeal is premised on the alleged noncompliance and misrepresentation concerning discovery, we conclude that additional findings are required on these matters. Consequently, we reverse the order and remand for further proceedings consistent with this opinion.
A. Standard of Review
¶ 14 In reviewing the denial of a motion for postconviction relief following a hearing, we defer to the district court's factual findings, so long as they are supported by the record; we review its conclusions of law de novo.
*32 People v. Stovall, 2012 COA 7, ¶ 18, 284 P.3d 151 (citing Carmichael v. People, 206 P.3d 800, 807-08 (Colo.2009) ). A challenge to the validity of a guilty plea presents a mixed question of law and fact, see Sanchez-Martinez v. People, 250 P.3d 1248, 1254 (Colo.2011), as does a claim of ineffective assistance of counsel. People v. Valdez, 178 P.3d 1269, 1278 (Colo.App.2007).
B. Prosecution's Duty to Disclose
¶ 15 Corson contends that his plea was unintelligent and involuntary and his counsel was rendered ineffective because the prosecution failed to comply with its discovery obligations under Crim. P. 16 and Brady. We conclude that the case must be remanded to permit the district court to address this claim.
¶ 16 It is well settled that a prosecutor has both a statutory and a constitutional obligation to disclose to the defense any material, exculpatory evidence he or she possesses. See Crim. P. 16(I)(a)(2) ; Brady, 373 U.S. at 86-88, 83 S.Ct. 1194. Exculpatory evidence includes evidence that bears on the credibility of a prosecution witness. People v. Bradley, 25 P.3d 1271, 1276 (Colo.App.2001) (citing People v. Dist. Court, 793 P.2d 163, 166 (Colo.1990) ).
¶ 17 In its written ruling, the trial court did not address whether the prosecution was required to disclose the juvenile adjudications or other impeachment evidence, and, hence, whether Corson's guilty plea was induced by the prosecution's affirmative representation regarding the existence of exculpatory evidence. However, in an oral ruling, the court found that "as a matter of law juvenile adjudications are not subject to discovery." This ruling was an incorrect statement of the law.
¶ 18 Evidence requested by the defense is discoverable, regardless of whether it contains information admissible at trial, as long as its contents are relevant to the conduct of the defense. See People v. District Court, 790 P.2d 332, 338 (Colo.1990). And a prosecutor has a constitutional obligation to disclose evidence favorable to an accused, even without a request, if that evidence is material either to guilt or to punishment. See Brady, 373 U.S. at 87-88, 83 S.Ct. 1194 ; United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). As relevant here, Crim. P. 16(I)(a)(1)(V) provides that a prosecutor shall disclose to defense counsel the criminal history of "any person the prosecuting attorney intends to call as a witness in the case." While this disclosure provision does not enumerate "juvenile adjudications," Crim. P. 16(I)(a)(2) additionally provides that the prosecuting attorney shall disclose to the defense "any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor."
¶ 19 A juvenile adjudication is part of a witness's criminal history subject to disclosure because such evidence may tend to negate the guilt of the accused. See Brady, 373 U.S. at 87-88, 83 S.Ct. 1194 ; see also Crim. P. 16(I)(a). It may be used at trial to elicit a witness's bias, prejudice, motivation for testifying, or hope for leniency with respect to pending juvenile proceedings as consideration for testifying. See People v. Cevallos-Acosta, 140 P.3d 116, 127 (Colo.App.2005) (citing Davis v. Alaska, 415 U.S. 308, 320-21, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) ; People v. Bowman, 669 P.2d 1369, 1375 (Colo.1983) ); see also Thomas v. Commonwealth, 279 Va. 131, 688 S.E.2d 220, 233 n. 6 (2010) ("The Sixth Amendment does not require the trial court to permit impeachment with juvenile adjudications unless they can be used to establish bias, not merely to challenge general credibility." (quoting Tabron v. United States, 410 A.2d 209, 212 (D.C.1979) )).
¶ 20 Also, a prior juvenile adjudication for false reporting may be used to elicit character for untruthfulness. See CRE 608(b) ; People v. Gillis, 883 P.2d 554, 561-62 (Colo.App.1994) (prior specific instances involving false statements may be admissible for impeachment purposes under CRE 608(b) ); cf. People v. D'Apice, 735 P.2d 882, 883 (Colo.App.1986) (a juvenile adjudication may not be used, under § 13-90-101, C.R.S.2012, to impeach a witness's veracity by the mere fact that the juvenile has an adjudication).
*33 ¶ 21 Although the General Assembly has enacted a statute to protect the anonymity of juvenile offenders by limiting public access to juvenile records, or requiring a court order prior to disclosure of such records, see § 19-1-304, C.R.S.2012, the State's protection of the confidentiality of a juvenile offender's record must yield to a defendant's constitutional right to the effective cross-examination of an adverse witness with information that tends to negate the guilt of the accused as to the offense charged. Davis, 415 U.S. at 319-20, 94 S.Ct. 1105 ; see Crim. P. 16(I)(a)(2).
¶ 22 Thus, contrary to the district court's ruling, juvenile adjudications are subject to discovery. See Cevallos-Acosta, 140 P.3d at 127 (discussing juvenile adjudications as part of a witness's "criminal history" and ruling that the failure to disclose a pending juvenile case violated Crim. P. 16 ). To the extent that the prosecution may need a court order prior to turning over the adjudication records to the defense, see § 19-1-304, this requirement does not alter the discoverable nature of the adjudication. See People v. Herrera, 2012 COA 13, ¶ 16, 272 P.3d 1158, 1162 (a prosecutor should request court review of confidential records when he or she reasonably believes they contain evidence that is exculpatory or impeaching).
¶ 23 It is undisputed that the prosecution did not disclose to Corson evidence regarding K.B.'s juvenile adjudications. However, the Attorney General asserts that nothing in the record suggests the prosecution "had or should have had the materials [Corson] alleges he is entitled to," and, as a result, the prosecution was not obligated to disclose this evidence. We reject this assertion.
¶ 24 While it is unclear from the record whether the prosecution had access to K.B.'s medical records and the trial court made no findings in that regard, the record indicates that the prosecution had access to K.B.'s juvenile adjudications and arrest and investigatory records. Indeed, the record contains evidence that the same prosecutor who responded to Corson's discovery motions had secured K.B.'s juvenile adjudication for false reporting.
¶ 25 In addition, constitutional and statutory disclosure obligations encompass evidence known to the prosecution as well as evidence known only to the police. Crim. P. 16(I)(a)(3) ; Kyles v. Whitley, 514 U.S. 419, 437-38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Thus, the prosecution has a duty to learn of any evidence favorable to the defense which is known to others acting on the government's behalf in the case. Crim. P. 16(I)(b)(4) ; Kyles, 514 U.S. at 437-38, 115 S.Ct. 1555.
¶ 26 "Upon the defense's request and designation of material or information which would be discoverable if in the possession or control of the prosecuting attorney," the prosecution has an obligation to make "diligent good faith efforts" to make even evidence in the possession of other governmental personnel available to the defense. Crim. P. 16(I)(c)(1). And any evidence "claimed to be nondiscoverable" may be withheld by the prosecution pending a ruling of the court, but "the defense must be notified in writing that information has not been disclosed." Crim. P. 16(I)(b)(1).
¶ 27 While juvenile records are not generally accessible to the public, and there is no statutory provision specifically allowing for the prosecution in an unrelated case to access a juvenile's records, these records are open to inspection, without a court order, by "[a]ny law enforcement agency or police department in the state of Colorado." § 19-1-304(1)(a)(VII), C.R.S.2012. Because the district attorney's office is a law enforcement agency and the prosecution's disclosure obligations extend to any evidence held by the police, the prosecution was obligated to turn over this evidence or, at minimum, seek a court ruling, after providing notice to the defense. See Crim. P. 16(I)(b)(1).
¶ 28 The Attorney General, relying on United States v. Ruiz, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), asserts, nonetheless, that the prosecution was not required to disclose this impeachment evidence prior to Corson's entry of his guilty plea. In Ruiz, the U.S. Supreme Court held that the Constitution does not demand preguilty plea disclosure of impeachment evidence. Id. at 633, 122 S.Ct. 2450. Thus, the prosecution *34 may, consistent with a defendant's due process rights, refuse disclosure of impeachment evidence during the pendency of plea negotiations. Id.
¶ 29 However, under the unique circumstances of this case, we do not read Ruiz to relieve the prosecution of its disclosure obligation. In the present case, the prosecution did not merely decline to turn over information, but it made an affirmative representation that it had no discoverable evidence. Nothing in the law requires defendants to "scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed." Banks v. Dretke, 540 U.S. 668, 695, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). "A rule declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Id. at 696, 124 S.Ct. 1256.
¶ 30 And, in Ruiz, the case involved a "fast track" plea bargain, where a defendant, very early in the prosecution, waives indictment, as well as trial and an appeal. Ruiz, at 625. Here, however, Corson entered his guilty plea just a few days before his scheduled jury trial. The prosecution was required to make its disclosures no later than thirty-five days before trial. Crim. P. 16(I)(b)(3). Thus, the record shows that the prosecution was obligated, under the criminal discovery rules, to disclose the evidence before the guilty plea was entered here.
C. Misrepresentation
¶ 31 Corson contends that in response to his discovery requests, the prosecution made an affirmative misrepresentation as to the existence of K.B.'s history of false reporting and juvenile adjudications that induced his unintelligent and involuntary guilty plea. In its postconviction order, the court did not address Corson's claim that his guilty plea was induced by misrepresentation. Accordingly, we conclude that the case must be remanded to permit the district court to address this claim.
¶ 32 Because a guilty plea is an extensive waiver of the defendant's constitutional rights, a challenge is usually limited to whether the plea was knowing, voluntary, and intelligent. Sanchez-Martinez, 250 P.3d at 1254. A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant," and must be the product of "a free and rational choice." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A guilty plea that is induced by misrepresentation, fraud, or coercion is not voluntary. People v. Antonio-Antimo, 29 P.3d 298, 301 (Colo.2000) (citing Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ; People v. Kyler, 991 P.2d 810, 816 (Colo.1999) ).
¶ 33 When evaluating whether there is a misrepresentation as to the existence of discoverable evidence, a court should evaluate whether there is a significant likelihood that the prosecutor's response to the discovery motion misleadingly induced defense counsel to believe that the witness could not be impeached at trial with the requested information. See United States v. Bagley, 473 U.S. 667, 683, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In making this determination, "the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption." Id. at 682-83, 105 S.Ct. 3375.
¶ 34 As noted, the district court made no findings regarding whether the prosecution's responses to Corson's discovery requests constituted a misrepresentation of the existence of K.B.'s history of false reporting and juvenile adjudications. Likewise, it did not address whether the misrepresentation, if any, induced Corson's guilty plea. We must, therefore, remand for further findings on this issue.
D. Ineffective Assistance of Counsel
¶ 35 Corson contends that his defense counsel's assistance was rendered ineffective by the prosecution's nondisclosure and misrepresentation of K.B.'s history of false reporting and juvenile adjudications. He asserts that the prosecution's conduct led *35 defense counsel to (1) erroneously assess whether he could impeach K.B. at trial, and (2) erroneously advise Corson to plead guilty. Corson contends he was prejudiced because had the prosecution disclosed this information, he would not have pleaded guilty and would have insisted on going to trial. Because this claim is premised on the prosecution's discovery obligations (including any obligation to disclose juvenile adjudications) and the alleged misrepresentation, on remand the court must make further factual findings and reevaluate the claim under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 36 The requirements of effective counsel under the Sixth Amendment apply to plea negotiations, including the advice counsel provides to his or her client. Lafler v. Cooper, 566 U.S. 156, 162, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) ; Carmichael, 206 P.3d at 806. To prevail on an ineffective assistance claim, a defendant must establish (1) that defense counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. 2052 ; People v. Rodriguez, 914 P.2d 230, 299 (Colo.1996).
¶ 37 Strickland sets forth two means by which a defendant may be denied effective assistance of counsel. First, counsel may "deprive a defendant of the right to effective assistance, simply by failing to render 'adequate legal assistance.' " Strickland, 466 U.S. at 686, 104 S.Ct. 2052 (quoting Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ). Such claims are sometimes referred to as "actual ineffectiveness" claims. Id. To establish actual ineffectiveness, a defendant must prove that his attorney's performance "fell below an objective standard of reasonableness." Id. at 688.
¶ 38 Second, a defendant may be denied effective assistance of counsel where the government "interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." Id. at 686 (citing examples).
¶ 39 In the context of this case, this evaluation turns on whether the prosecution's responses to Corson's discovery requests led defense counsel to assume that the witness could not be confronted at trial with her false reporting history and juvenile adjudications. See Bagley, 473 U.S. at 682-83, 105 S.Ct. 3375. If the court concludes that they did, it must then consider whether this conduct affected counsel's ability to make pretrial decisions on the basis of this assumption. Id.
¶ 40 With regard to the "prejudice" prong, we initially observe that this is not a case in which the defendant has alleged the complete denial of counsel such that prejudice can be presumed. That presumption is limited to cases where counsel was either totally absent or "altogether" prevented from assisting the defendant during a critical stage of the proceeding. See Perry v. Leeke, 488 U.S. 272, 280, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989) (quoting Strickland, 466 U.S. at 692, 104 S.Ct. 2052 ); United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ; Rodriguez, 914 P.2d at 299-300 ; see also Roe v. Flores-Ortega, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (if a defendant would have chosen a different course of action "but for" his attorney's performance, an inquiry into prejudice is warranted).
¶ 41 Thus, prejudice is determined by whether there is a reasonable probability that, but for the interference with defense counsel's decision-making ability, the defendant "would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ; see also Carmichael, 206 P.3d at 806-07. This determination will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. Hill, 474 U.S. at 59, 106 S.Ct. 366. In assessing a defendant's claim that he would have followed counsel's recommendation to reject a plea and insist on going to trial, a court should consider whether this course of action would have been rational under the circumstances. See People v. Finney, 2012 COA 38, ¶¶ 70-71, 328 P.3d 205 (citing Hill, 474 U.S. at 59, 106 S.Ct. 366 ) (the court should assess, objectively, whether the evidence likely would have changed the outcome of a trial).
*36 ¶ 42 In its postconviction order, the district court applied the "actual ineffectiveness" analysis to conclude that Corson failed to prove that his attorney's performance fell below the level of reasonably competent assistance. Because Corson's ineffective assistance claim is based on the alternative ground under Strickland -which requires an evaluation whether the prosecution's conduct interfered with defense counsel's "ability to make independent decisions about how to conduct the defense," Strickland, 466 U.S. at 686, 104 S.Ct. 2052 -we direct the district court on remand to so evaluate the claim.
¶ 43 In this regard, the district court should also reevaluate the significance of its finding that Corson personally knew of K.B.'s history of false reporting and juvenile adjudications. While this finding has record support, it does not complete the prejudice analysis. The inquiry must also assess whether defense counsel, in advising Corson to plead guilty, reasonably discounted his client's knowledge and instead relied on the prosecution's representation that this evidence did not exist to conclude that the witness could not be confronted with this information. Finally, the court must evaluate whether counsel would have changed his recommendation, had he received discovery of that evidence, confirming his client's knowledge. See Hill, 474 U.S. at 59, 106 S.Ct. 366.
III. Conclusion
¶ 44 Upon remand, the district court should evaluate whether the prosecution misrepresented its compliance with its discovery obligations and whether the misrepresentation, if any, induced Corson's guilty plea. The court must also reconsider Corson's ineffective assistance claim under the applicable Strickland standard. If the court finds that the prosecution improperly interfered with defense counsel's ability to make independent decisions about how to conduct the defense, then the court must proceed to a reconsideration of the prejudice prong. The court may, in its discretion, allow further evidence on these issues.
¶ 45 The order is reversed and the case remanded for further proceedings consistent with this opinion.
Judge GABRIEL and Judge MÁRQUEZ* concur.

K.B.'s alleged recantation is not at issue in this appeal.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2012.